UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-366 (WMW)

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                  **GOVERNMENT'S SENTENCING POSITION**

BERNARD JAMES BENAVIDEZ,

      Defendant.

Defendant Bernard James Benavidez meticulously—and repeatedly—exploited his successful jewelry business to defraud the public fisc of more than $147,000 in tax payments. This required Benavidez to carefully disguise his actions from his employees, customers, accountant, and family to ensure his fraud went undetected. Although now remorseful, there is no reason to believe Benavidez would have stopped absent the anonymous tip that led to his prosecution. The United States respectfully recommends that the Court impose an 8-month term of imprisonment, which falls at the bottom end of the applicable Guidelines range.[1] Such a sentence reflects the severity of Benavidez's conduct, accounts for his acceptance of responsibility, and seeks to achieve the vital need for specific and general deterrence regarding tax fraud.

## Benavidez's Criminal Conduct

For over 25 years, Benavidez has solely owned and operated Master Jewelers in Rochester, Minnesota. The business—which focuses on the creation of custom jewelry—

---

[1] This revised Guidelines range accounts for the parties' joint variance motion—explained below and put on the record at the sentencing hearing—based on the impending two-level reduction for zero-point offenders that is set to take effect on November 1, 2023.

has consistently generated significant gross profits and provided Benavidez a comfortable living. By his own admission, Benavidez's business success is predicated on "brand recognition, reputation, and customer loyalty." (PSR ¶ 57.) This background makes Benavidez's tax fraud even more confounding.

As its sole owner, Benavidez bore responsibility for ensuring Master Jewelers paid its tax liabilities while independently accounting for his own earnings. Benavidez's tax fraud scheme revolved around diverting proceeds of Master Jewelers into his personal bank accounts to avoid tax liabilities. He primarily accomplished this in two ways. First, by its very nature, Master Jewelers generated a significant amount of valuable scrap metal. Benavidez would sell this scrap metal on behalf of Master Jewelers but then direct the vendor to pay him directly. Second, on numerous occasions, Benavidez simply invited customers to pay him directly for business dealings with Master Jewelers. He explained that such an arrangement benefitted the customer because it avoided the need of paying sales tax.

But Benavidez's scheme required additional deception. He relied on an independent accounting firm to reconcile Master Jewelers sales and then prepare both corporate and individual tax calculations. The independent accounting firm relied on Benavidez to provide accurate records to complete its work. This required Benavidez to continuously manipulate the records of Master Jewelers to conceal his fraudulent behavior. He then repeatedly—and under penalty of perjury—lied on Master Jewelers's tax filings, which vastly underreported its sales.

Ultimately, an anonymous tip led to Benavidez's undoing. Numerous subsequent witness interviews corroborated Benavidez's fraudulent behavior, and, in October 2019,

Benavidez directed an undercover officer to pay him directly for business dealings with Master Jewelers.

In total, between 2013 and 2017, Benavidez successfully concealed $432,373.42 in Master Jewelers sales, which resulted in unpaid tax liabilities of $147,006.96.[2] To his credit, when confronted with the prospect of criminal prosecution, Benavidez accepted responsibility for his actions. On February 3, 2023, he pleaded guilty to a felony information of making and subscribing a false tax return.

## The Presentence Report

The PSR correctly calculated a Guidelines range of 12-18 months based on a total offense level of 13 and a criminal history category of I. (PSR ¶ 59.) The parties do not have any outstanding objections or disputes regarding the PSR. (PSR at A.1.)

Although the Court must apply the Guidelines in effect at the time of sentencing, U.S.S.G. § 1B1.11(a), the parties are aware, however, that the United States Sentencing Commission has proposed a variety of new amendments that are set to take effect on November 1, 2023. As relevant here, those new amendments call for a two-level downward adjustment under certain circumstances for defendants with zero criminal history points. It appears Benavidez would qualify for this amendment if his sentencing hearing was held in a few months' time.

Given these circumstances, the parties jointly agree to move for a two-level downward variance from the otherwise applicable Guidelines range. Benavidez agrees

---

[2] Notably, this amount reflects only a calculation of the underreported earnings of Master Jewelers. It does not account for the diverted income Benavidez deposited into personal accounts but failed to report on his personal tax returns or the lost sales tax he did not charge the customers who paid him directly.

that he will not later seek, by any means, a further reduced sentence on the basis that the new 4C1.1 was inapplicable at the time of his sentencing.

The parties' joint motion for a downward variance, if granted, would reduce the otherwise applicable Guidelines range from 12-18 months to 8-14 months.

### The Appropriate Sentence

Benavidez's criminality appears to be animated entirely by greed. As the Court knows, the federal income tax system operates almost exclusively on the good faith and voluntary compliance of the American taxpayer. Crimes such as the one Benavidez committed here, in which he concealed business income by diverting funds and manipulating his books, are difficult to detect and prove. The interests of both specific and general deterrence counsel in favor of sending the message that although taxpayers may get away with such a scheme, they risk a custodial consequence—regardless of their ability to pay restitution—if they are caught. The United States respectfully requests a sentence of 8 months' imprisonment followed by a 1-year term of supervised release.

    A.    <u>Nature & Seriousness of the Offense</u>

The criminal conduct in this case is serious and entirely senseless. This was not a one-time mistake. Benavidez spent *years* carefully diverting business income to enrich himself. This required numerous overt steps. Benavidez had to (1) convince a vendor or customer to pay him directly, (2) divert the funds to his personal account, (3) manipulate his books to account for the change in inventory without the corresponding sale, (4) review accounting statements he knew to be incorrect, and (5) swear—under penalty of perjury—that his tax filings were true and accurate when he knew otherwise.

4

Perhaps most aggravating is that Benavidez enriched himself to the tune of $432,373.42 in untaxed income, which robbed the public of more than $147,000 in unpaid taxes. This is not a victimless crime, as public funds are finite. There is no shortage of programs and causes that rely on public funds. Benavidez—and others like him—exploit every honest taxpayer and steal from everyone who depends on federal programming. But this need gave Benavidez no pause as he stole for his own benefit at the expense of others.

B. History & Characteristics of the Defendant

Benavidez's history and characteristics provide no apparent context for his actions. He benefitted from a relatively stable upbringing that allowed him to pursue a college education and find his vocation. To his credit, Benavidez prospered. His passion for jewelry has provided stable self-employment since 1988. Benavidez has been gainfully employed throughout his adult life and earned a considerable personal net worth. These realities helped Benavidez foster his own loving and supportive family, who remain firmly in his corner. Benavidez is reportedly in good physical and emotional health without any history of substance abuse. The government highlights these realities not to punish Benavidez for his good fortune. Instead, Benavidez's history and characteristics aggravate the senseless nature of his criminal conduct.

C. Need for Specific and General Deterrence

Fraud defendants "act rationally, calculating and comparing the risks and the rewards before deciding whether to engage in criminal activity." *United States v. Warner*, 792 F.3d 847, 860-61 (7th Cir. 2015). Such defendants are prime candidates for a sentence tailored toward deterrence. *Id.*; *see also United States v. Musgrave*, 761

5

F.3d 602, 609 (6th Cir. 2014) (concluding that fraud defendants are ripe for deterrence because "economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity.").

The need for specific deterrence is somewhat muted by Benavidez's response to the prospect of criminal prosecution. Benavidez deserves credit for his prompt acceptance of responsibility and the decision to plead guilty at the earliest possible stage of this proceeding. The government is troubled, however, by other aspects of Benavidez's orientation. His acceptance of responsibility focuses almost exclusively on his own plight, sacrifice, and ability to pay restitution. It also does not appear that Benavidez has been fully forthcoming with those in his orbit about the nature and extent of his tax fraud. This is underscored by the fact that so many in his realm describe him as an honest person of high integrity. Benavidez opines that a custodial sentence would undermine his business operations. Entirely absent from this is any recognition of the broader disingenuous aspects of his crimes and its effect on the public fisc.

Separately, the need for general deterrence also is greatest in cases involving lucrative, but difficult to detect, tax crimes. These types of tax fraud schemes frequently are the subject of a cost-benefit analysis in which the defendant weighs the risk of apprehension against the available windfall. *See, e.g., United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."). Absent significant punishment, like-minded offenders may well determine this offense is worth the cost—particularly if their

age, lack of criminal history, employment, or ability to pay restitution can guarantee a probationary disposition. Indeed, as the Sentencing Commission has explained:

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

U.S.S.G. § 2T1.1 (intro cut.); *see also United States v. Ture*, 450 F.3d 352, 357-58 (8th Cir. 2006) (concluding that a downward variance to probation was unreasonable because "[a]s the Guidelines explain, willful tax evaders often go undetected such that those who are caught . . . evading nearly a quarter-million dollars in tax must be given some term of imprisonment."); *United States v. Hassebrock*, 663 F.3d 906, 922 (7th Cir. 2011) (affirming as reasonable a custodial sentence for a defendant in a tax case because "a sentence of probation would not promote respect for the law, but encourage people to flaunt it . . . Because of the limited number of criminal tax prosecutions relative to the estimated incidents of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines.").

Thus, to provide adequate deterrence to others inclined to commit tax fraud, the government maintains that a below-Guidelines sentence of 8-months' imprisonment is appropriate. Such a sentence recognizes the mitigating circumstances of Benavidez's situation while clearly conveying to would-be tax cheats that severe consequences will await them should they engage in similar conduct.

## **Conclusion**

For all these reasons, the government respectfully submits that the Court order Benavidez to pay $147,006.96 in restitution and impose a sentence of 8-months' imprisonment followed by a 1-year term of supervised release. Such a sentence fully comports with the United States Sentencing Guidelines and the goals of Title 18, United States Code, Section 3553(a).

Dated: July 7, 2023                    Respectfully Submitted,

                                              ANDREW M. LUGER
                                              United States Attorney

                                              */s/ Jordan L. Sing*

                                              JORDAN L. SING
                                              Assistant United States Attorney